EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN BAUTISTA ROMÁN, acusado y apelante.

Núm. 7347.—*Sometido:* Marzo 29, 1939. *Resuelto:* Abril 20, 1939.

*A. Reyes Delgado* y *Pedro Santos Borges,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Juan Bautista Román fué acusado por el Fiscal de la Corte de Distrito de Arecibo como autor de un delito de homicidio voluntario cometido como sigue:

"El referido acusado, Juan Bautista Román, con anterioridad a la fecha de la presentación de esta acusación, o sea, el día 29 de sep-

tiembre de 1936, y en el barrio Palmas Altas, de Barceloneta, P. R., que forma parte del distrito judicial de Arecibo, P. R., ilegal, voluntaria, maliciosa y criminalmente, con motivo de una súbita pendencia, acometió y agredió con un revólver, que es un arma mortífera, a David Serrano, con intención de darle muerte, infiriéndole una herida de bala en el abdomen, a consecuencia de la cual falleció en el Hospital de la Universidad en San Juan, P. R., el día 2 de octubre de 1936.''

Celebrada la vista de la causa, el Jurado declaró al acusado culpable y la corte, por su sentencia, le impuso tres años de presidio con trabajos forzados. No conforme, apeló. Señala en su alegato tres errores como cometidos por la corte al permitir que el testigo Carmelo González expresara su opinión sobre si cierta puerta podía o no abrirse por fuera estando trancada por dentro; al negarse a trasmitir al Jurado determinadas instrucciones, y al pronunciar sentencia en contra de los hechos y la ley.

Examinemos el primer error. Declarando el testigo González, cabo de la Policía Insular, dijo que al personarse en la casa del acusado, éste le manifestó que habían ido a halarle la puerta y disparó sin saber a quién y que examinó la puerta y encontró en ella incrustado el plomo de una bala. Siguió contestando como sigue:

''P. ¿Dice que examinó la puerta?—Sí, señor.

''P. ¿Vió el impacto de bala y vió el plomo incrustado?—Sí, señor.

''P. ¿Pero el plomo atravesó la puerta o se quedó allí?—No la atravesó, se quedó incrustado.

''P. ¿Cómo estaba la puerta?—Cuando llegué estaba la puerta sola, y estaba tirada así de sesgue.

''P. ¿Examinó las visagras?—De la parte arriba rota y por la parte abajo, que son puertas de madera blanda, estaba roto, pero pude apreciar, como es en la orilla del mar, que estaba oxidado de hacía tiempo una parte, con antelación.

''P. ¿De arriba partida de hace poco?—Sí, señor.

''P. ¿Para dónde abría la puerta, para afuera o para adentro? —Hacia afuera.

''P. ¿Con qué trancaba por dentro?—Con una tranca.

"P. ¿La examinó bien?—A ciencia cierta no recuerdo si con tranca. Sé que trancaba para adentro.

"P. ¿Se recuerda si el instrumento que se usaba para cerrarla era algo fuerte, que la trancaba bien?—La puerta sí, porque la puse para probar con un señor que fué conmigo, la puse para ver y juntaba bien.

"P. ¿Cree posible . . . . ?

"Abogado Sr. Reyes Delgado. Me opongo a lo que crea.

"Hon. Juez. Vamos a ver la pregunta.

"P. ¿Cree posible, de acuerdo con el examen que hizo con la puerta y los experimentos que hizo, que esa puerta se pudiera abrir por fuera estando trancada por dentro?

"Abogado Sr. Reyes Delgado. Que se retire el Jurado.

"Hon. Juez. La Corte cree eso una pregunta corriente.

"Abogado Sr. Reyes Delgado. Pero es pedir una opinión a un testigo que no es perito. (Argumentó.) Él puede decir lo que hizo, pero no lo que cree.

"Hon. Juez. Conteste.

"Abogado Sr. Reyes Delgado. Excepción.

"Hon. Juez. Si después de trancada esa puerta ¿podía abrirse empujándola?—Mi opinión, que puede ser errónea, es que podía abrirse.

"P. ¿De afuera, halándola?—No, señor; por dentro abrirla así.

"P. ¿Y si esa puerta estando trancada por dentro, sin la visagra de arriba, rota, si una persona de afuera pudiera halarla y romper lo que había dentro para que se abriera?—Imposible, no puede abrirse.

"A preguntas del abogado Sr. Reyes Delgado, declaró:

"P. ¿Se podía si era puerta entera de arriba a abajo o puerta al medio?—Una puerta enteriza.

"P. ¿Son dos hojas de puerta como estas dos y la puerta de allá estaba caída?—¿Cuál?

"P. ¿De un lado de allá? ¿Estaba rota la visagra?—Sí, señor.

"P. ¿Sabe si alguno le pegó los brazos para arrancarla?—No sé. Sé que la encontré en el suelo, la puerta, la visagra de arriba en aquel acto, pero la de abajo estaba abierta.

"P. ¿Sabe si esa puerta era la puerta que pisaba la otra o la pisada, o, en otras palabras: cuál era el macho o la hembra? Era la que pisaba.

"P. ¿No era la que estaba pisando?—La que está pisando es del lado de acá.

"P. ¿Y no puede asegurar si esa puerta trancada es con tranca, llave o cómo?—No puedo asegurarlo."

No hubo error, a nuestro juicio. Se trataba de un testigo de cierta ilustración y experiencia que examinó la puerta y que podía considerársele capacitado para expresar su opinión en el momento y en la forma en que le fué pedida. En *Crowell* v. *State*, 120 S. W. 897, 902, que fué un caso de asesinato, la Corte de Apelaciones Criminales de Texas, al enfrentarse con una situación semejante a la que estamos considerando, dijo:

"Mientras el testigo Joseph Rinefeldt estaba declarando, y después de haber descrito detalladamente la escalera y la puerta que allí conducían, se le preguntó si era posible o imposible que el cuerpo de una persona que pesaba 135 libras hubiese rodado hasta dar contra la puerta sin haberla abierto, a lo que contestó que un cuerpo que así rodase hasta dar contra ella la habría abierto. Se opusieron a esto porque no era campo propio para testimonio pericial, y el testigo no era un perito. Creemos que en materia de peso, fuerza y poder de resistencia, y cuestiones de esta índole, es claramente propio para una persona conocedora de, y familiarizada con las circunstancias existentes, según han sido probadas, expresar su opinión al efecto de si un cuerpo de un peso dado, haciendo presión contra una puerta, habría abierto la misma. Este testigo demostró estar bien familiarizado con la puerta. Hubiera sido muy difícil haber determinado el poder de resistencia de la misma sin haber puesto en evidencia la declaración del testigo a ese efecto, o en la forma que se hizo para demostrar los hechos."

■ Veamos el segundo señalamiento de error. Ya dijimos que se refiere a las instrucciones al Jurado. Lo que consta del récord es que una vez que el juez terminó de trasmitirlas, ocurrió lo que sigue:

"Abogado Sr. Reyes Delgado. Yo tengo instrucciones que someter a la Corte y pido que se retire el jurado antes que empiece a deliberar. Y, tomamos excepción a todas las instrucciones dadas y tomamos excepción especialmente, a la instrucción relativa a la duda razonable y vamos a pedir y tomar excepción específicamente, a la instrucción relacionada con la penetración o intento de penetración del interfecto en la casa del acusado. Vamos a pedir a la Corte, que modifique o reconsidere su instrucción en cuanto a duda razonable, a la penetración o intento de penetración por el interfecto en la casa del acusado dándolas en el siguiente contexto: una persona

puede repeler la fuerza con la fuerza en la defensa de la persona, bienes o vida contra uno que abiertamente intenta o trata por medio de la violencia y de la sorpresa, de cometer un determinado delito, *misdemeanor* o *felony,* o cualquiera de ellos, o de causar un grave daño corporal a su persona, y el peligro que justificaría al acusado cometer el acto imputádole, puede ser real o aparente; y el jurado no tiene que considerar si el acusado estaba en verdadero peligro de su vida o propiedad, sino solamente si las circunstancias eran tales que indujera a una persona de mente sana a creer que su persona o bienes estaban expuestos a tal peligro; y si racionalmente podría así creerlo y tenía suficiente causa para estimarlo así y cometió el hecho que se le imputa bajo tal creencia, aun cuando apareciera que el interfecto no estaba armado, los jurados deben absolver al acusado.

"Hon. Juez. En cuanto a esa petición, la Corte entiende que ha dado instrucción amplia y que deja a resolver al jurado, que si el conjunto y circunstancias de la prueba, justificaran que el acusado (*sic*) entró o estaba entrando en la casa con la intención de agredir o de cometer un delito grave, en ese caso deben absolver al acusado, que es lo mismo que pide el abogado, aun cuando yo entiendo, que nuestra instrucción es más amplia.

"Abogado Sr. Reyes Delgado. Tomamos excepción por los fundamentos del caso del *Pueblo* v. *Sutton,* 17 D.P.R. 345, 367. Ahora vamos a pedir a la Corte modifique su instrucción sobre duda razonable, estableciéndola en los términos del artículo 236 del Código Criminal que dice así: en todo proceso criminal se considerará al acusado inocente mientras no se pruebe lo contrario y en caso de existir duda razonable o fundada acerca de su culpabilidad, se le absuelve.

"Hon. Juez. La Corte deniega la instrucción porque he dado amplia instrucción sobre duda razonable y cree que no está obligada a seguir estrictamente las palabras del estatuto.

"Abogado Sr. Reyes. Excepción."

Recientemente, en el caso de *El Pueblo* v. *Ramírez,* 50 D.P.R. 234, 255, esta corte dijo:

"Somos de opinión que las instrucciones dadas por la corte cubrieron plenamente y de una manera justa e imparcial la doctrina legal sobre el derecho a la legítima defensa, con perfecta adaptación a los hechos establecidos por las declaraciones de los testigos presenciales, las que examinaremos más adelante en esta opinión. Las instrucciones dadas cubrieron prácticamente todos los puntos sugeridos por la defensa en las instrucciones por ella propuestas y denegadas

por la corte. Y seguramente la corte se negó a darlas por temor de confundir e impresionar indebidamente al jurado.''

Se cita de 14 R. C. L. 751, 8 Cal. Jur. 314 y *El Pueblo v. Martí*, 43 D.P.R. 441.

Y así sucede en este caso. Las instrucciones trasmitidas habían ya cubierto el campo debidamente y no era necesario repetirlas en la forma solicitada por la defensa. No hubo error.

■ Tampoco fué cometido el tercero y último de los errores señalados. A nuestro juicio la sentencia dictada no es contraria si que se ajusta a los hechos y a la ley.

Que Serrano murió a consecuencia del disparo que le hiciera el acusado, no se discute. Lo que se discute es si el disparo se hizo o no por el acusado en defensa de su morada, a los efectos de resolver si fué o no excusable de acuerdo con la ley.

María Serrano, madre del interfecto y testigo del Pueblo, declaró que en la noche del suceso después que su hijo llegó con el acusado al cafetín de éste, oyó al acusado hablando duro y lo vió con un revólver en la mano y a su señora y una hermana que le decían ¿qué vas a hacer? ''hasta que se pudo quitar de ellas y tiró el tiro de la casa de él para abajo.'' En ese momento no vió a su hijo. ''Lo ví cuando llegó a mi puerta, herido, . . . Le llegué a aflojar la correa y decía: 'Ay, mamá, con la bala' . . . me pidió agua, y dijo: 'écheme la bendición' y dije: 'hijo mío, ¿qué te pasa?' 'Juan Román, abusador.' ''

Y el acusado manifestó que anduvo esa noche con Serrano pero regresaron temprano y después de haber comido en su tienda, Serrano se retiró; que allá como a media noche sintieron que movían fuertemente una de las puertas de la casa, se levantó, cogió su revólver y metiendo su mano por la otra puerta disparó sin saber a quién; que había prestado declaración al policía González, al ser arrestado, en el sentido de que había hecho dos disparos; que después sacó uno de los casquillos de una de las balas disparadas y lo sus-

tituyó por una bala que le quedaba, por lo que el revólver, al serle entregado al policía González aparecía con una sola bala disparada, y que lo hizo como medida de defensa, temiendo ulteriores ataques por parte de los familiares del interfecto; que disparó tan pronto sintió que halaban la puerta; que al disparar su familia estaba durmiendo; que la noche era clara, porque había luna; que el interfecto y él eran amigos; que no vió si la puerta por donde disparó estaba en el suelo; que nunca han tratado de escalar su tienda, ni tiene enemigos en el barrio, ni había tenido disgustos con alguno, pero creyó que iban a robarle lo que tenía en la tienda, pero el disparo lo hizo desde la puerta· de la sala que no conecta a ésta con la tienda.

El Jurado dirimió el conflicto en contra del acusado y lo declaró culpable. Nada demuestra que actuara movido por pasión, prejuicio o parcialidad o que cometiera error manifiesto alguno. Eso aparte de que de la propia declaración del acusado no surge un caso completo de defensa del hogar.

*Debe confirmarse la sentencia apelada.*